### THE ROSE STANDISH.

#### Petition of NANTASKET BEACH STEAMBOAT CO.

District Court, D. Massachusetts. May 18, 1928.

No. 64.

1. Collision ⬙96—Steamboat approaching wharf held not at fault, where exhaust valve failed to operate, preventing stopping, resulting in collision.

Where steamboat was about 130 feet from wharf, with speed of approximately two knots per hour, when captain gave signal to slow, which was followed by signal to stop, and then by signal to reverse, and engine was reversed, but, owing to failure of exhaust valve to operate normally, engine failed to respond and boat was not brought to stop until after it had collided with ferryboat, steamboat *held* not at fault.

2. Shipping ⬙209(3)—In proceeding by owner of boat for limitation of liability for collision, burden of proof on merits is on claimant, not on petitioner.

In proceeding by owner of boat for limitation of liability for collision, burden of proof on merits is on claimant, and not on the petitioner.

In Admiralty. Petition of the Nantasket Beach Steamboat Company to limit liability as owner of the steamer Rose Standish. Decree in accordance with opinion.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioner.

BREWSTER, District Judge. The above-entitled matter is a petition for limitation of liability, brought by the owners of the steamship Rose Standish, and involves a collision between that steamboat and the ferryboat Brewster, owned and operated by the Boston, Revere Beach & Lynn Railroad, as a result of which collision several persons received injuries more or less serious.

[1] It was conceded at the hearing that the petitioner had a right to limit its liability, leaving as the only one to be considered the question whether there was any liability at all. The evidence warranted the following findings:

On the afternoon of June 12, 1927, the Rose Standish, returning from Nantasket Beach, arrived at her customary berth at Rowe's Wharf at about 4:46 o'clock p. m. The weather was clear, and light northwesterly winds prevailed. In approaching Rowe's Wharf she took her usual course, which brought the wharf on her starboard side. When about 130 feet from the wharf, with a speed of approximately two knots per hour, the captain gave the signal to slow, which was followed by a signal to stop, and then by a signal to reverse. These signals were all received by the engineer and the engine reversed, but, owing to the failure of an exhaust valve to operate normally, the engine failed to respond, and as a result it was not brought to a stop until after it had collided with the Brewster, which had just then left the ferry slip adjacent to the wharf of the steamboat company.

There was no evidence that the exhaust valve in the engine was defective, nor do I understand that the claimants seriously contend that the company was negligent in using the type of exhaust valve that was used. While the type was an old type, it

was commonly in use, and more generally used than any other on sidewheel vessels.

The evidence showed that the engine had been thoroughly overhauled by the chief engineer shortly before the accident, had been then examined and found to be in good order in all respects, and had been repacked; that the valve had never failed to work before or since, and, without anything being done to it, the same valve had been in constant use since the accident, and no trouble had been experienced. The oiler testified that the valve was oiled on every trip, and that he oiled the valve on this particular trip before the boat left Nantasket Beach.

None of the witnesses were able to definitely state what was the cause of the failure of the exhaust valve to close. They agreed that the most probable cause was the presence of some sediment that reached the valve through the steam pipe. No device is known to absolutely prevent this result. The boilers had been thoroughly cleaned and inspected before the vessel had been put in commission, about two weeks before the accident, and the engineer testified that he took the ordinary and usual precautions to prevent the accumulation of sediment in the boiler, but he and other witnesses agreed that it would still be possible for particles of sediment to find their way into the valve and interfere with its proper working.

As to the probabilities of a failure of an exhaust valve to properly function, one witness said he had never known of it before; another, that he had heard of one or two instances during an extended experience; and a third testified that he had known of several occasions when the valve had failed to close. The failure to function was shown to be an event which might happen, but there was testimony tending to show that it was one which could not be foreseen or prevented.

The drift of the argument for the claimants was that, knowing that there was always a possibility that the exhaust valve might not function properly, it was the duty of the navigator of the Rose Standish to come up to her berth in such a manner as to enable him to stop his vessel before it passed beyond her berth, if the exhaust valve failed to operate. In answer to this, the steamboat company says that it is necessary for the boat to go at least two knots an hour in order to maintain steerageway, and anything less than this renders it impossible to control the movements of the vessel, so as to bring her alongside of the wharf; that the wharf was approached in the usual manner at the ordinary rate of speed; and that the signals to slow,

26 F.(2d)—31

stop, and reverse were given at the usual distance from the wharf. This seems to me to be a complete answer to claimants' arguments. [2] A consideration of this evidence carries me to the conclusion that no negligence or fault on the part of the steamboat Rose Standish has been shown. It has been held that, in a proceeding for limitation of liability, the burden of proof on the merits is nevertheless on the claimant, and not on the petitioner. In re Davidson S. S. Co. (D. C.) 133 F. 411; Ferryboat St. Louis, 1928 A. M. C. 400 (February 6, 1928). This burden the claimants have failed to maintain.

I adjudge, therefore, that the petitioner is not liable for any loss, damage, or injury arising from the collision above described.

A decree may be entered accordingly.